Bentley, J.
(orally.)
This action was begun in the Court of Common Pleas in the name of the State of Ohio upon complaint of David Gordon for the purpose of recovering a judgment under sec. 5 of the act of 1893, 90 O. L., 24. Sec. 5, page 25, provides a penalty for the violation of this act — an act regarding the filling and plugging of oil wells.
A general demurrer was filed to the petition in the Court of Common Pleas, which being overruled, the defendant answered and went to trial to a jury, and the jury finding in favor of the plaintiff.
This action was brought on error to reverse the judgment of the Court of Common Pleas. But the reason assigned why judgment should have been in favor of the defendant, instead of the plaintiff below, is the insufficiency of the petition. The allegations of the petition are comparatively brief, and perhaps I better read it:
“The defendant is a corporation incorporated under the laws of the State of Ohio. The defendant, for several years last past, has been operating on a certain well, constructed for the purpose of producing petroleum oil and natural gas, the same being situated on a parcel of land described as follows, to-wit, describing the land.”
“The defendant claims to .be the owner of said well, etc.,” reading at length.
Section 2, under which it is presumed this petition is sought to be drawn, reads as follows:
“That the owner or operator of any well constructed for either or any of the purposes named in the first section of this act, when about to abandon or cease operating the same, and before drawing the casing therefrom, shall securely fill such well with rock sediment, or with mortar composed of two parts sand and one (1) part cement to the depth of two hundred (200) feet above the top of the first oil or gas bearing rock, in -such manner as shall prevent the surface or fresh water from penetrating to the oil or gas bearing rock, and also as shall prevent the gas and oil from escaping therefrom. If the owner or operator of any such well shall fail to or shall inefficiently comply with the provisions of this section, then the owner of the land upon which said well is situated shall forthwith comply therewith. If all the persons here before named shall fail to or shall inefficiently fill such well in the manner hereinbefore described, then it shall be lawful for any person, after written demand therefor to ■any of said persons, to enter the premises where such well is situated, 'take possession thereof and fully comply with the provisions of this section. The reasonable cost and expense thereof shall forthwith be paid by 'the owner or operator of the well, and on his default, by the owner of the land. The amount of such reasonable cost and expense shall forthwith 'be a lien upon the fixtures and machinery and leasehold interest of the owner and operator of said well, as well as_ upon the title and interest of the landowner in the land upon which said well is situated, and may ’be recovered or enforced against said owner or operator and said land■owner in the order named, in any court of competent jurisdiction.”
*753 Omitting secs, three and four, sec. five provides:
“That any person,, copartnership or corporation violating any of the provisions of this act shall be liable to a penalty of one hundred dollars, to be recovered with costs of suit in a civil action ini the name of the state of Ohio, in any court of competent jurisdiction in the county ini which the act shall have been committed or omitted. Such suit may be brought at the instance of any resident of the state of Ohio without security or liability for costs. The amount of said penalty when collected shall be paid one-half into the school fund of the county in which said suit is brought, and one-half to said person at whose instance said suit shall have been brought.”
Presumably, upon this sec. 5, this action, as here brought, is sought to be maintained. It is brought, as will appear, in the name of the state upon complaint of one Gordon. The statute provides that such an action may be brought in the name of the state upon a complaint of a resident of the county. In this petition it does not appear that Mr. Gordon is a resident of the county, nor where he resides, nor who he is, but'only a general demurrer to the petition is urged. It is probable that the specific objection which might be made to this petition, by reason of this failure to allege that the name of the state is used upon, complaint of a resident of a county as provided, goes to the legal capacity of the plaintiff to maintain this suit, for the defendant’s objection to it must be taken either by a demurrer or by answer specifically calling attention to the defect and relying upon it.
The code provides that unless a demurrer shall particularize, it shall be considered simply as a general demurrer to the petition, as setting up no cause of action against the defendant, and there is also a provision that where the objection that the plaintiff has no legal capacity to sue is not taken either by answer or demurrer, it shall be taken as waived, and if this objection is properly considered as founded upon the claim that the plaintiff has no legal capacity to sue, it has been waived by failure to specifically point it out.
In fact, this objection was not mentioned in the argument before us, and was not urged in any way; the main complaint, however, is that the petitione does not state facts sufficient to constitute a cause of action against the defendant in any way. If this were so, no matter what the proofs might have been below, the judgment ought to have been held erroneous. This statute provides for a penalty and its provisions must be strictly construed.
Under the general rules of construction, the defendant is not to be held liable, unless under the statute as it should be construed, he has violated its provisions and incurred the penalty prescribed by that act. I have read the first section of that act because we think it bears largely upon the construction to be given to the second section.
This petition, in general terms, avers that this party is the operator of the well. It does not appear that it drilled the well. The well might have been fully completed before it became, in any manner, interested in it; so that, although the petition alleges that the surface water — the fresh water — does penetrate the oil and gas bearing rock through the well, and alleges that the well is in such a condition that it will do that, yet it does ' not allege that it is by reason of a failure to properly case it up as provided in the first section of the act. The casing is to be put in by the 'owner or operator and before the oil bearing rock has been reached-^ while the well is, in fact, being drilled.
But fhe penalty is said to have been incurred because, as the petition alleges: “That while the defendant is pretending to operate the well, it has in fact ceased to operate the same.” That at the time of the filing *754 of the petition the defendant “has ceased actually to operate the well.” The petition does not allege when it ceased, or that it has ceased at any time prior to the actual time of filing or preparing the petition. Whether it ceased that day or the day before, or had ceased for a long time to operate the well, does not appear from the averments of the petition.
In making this statement, I do not forget the allegation of the petition which says: “That ever since the first day of April, 1893, it (the defendant) has unlawfully and) willfully neglected and- omitted to securely fill said well with rock sediment.” That is not an allegation that on or prior to the first day of April, 1893, it had ceased to operate the well, or that prior to that time it was about to cease to operate or abandon the well; so that, from the allegations of the petition it may be that on the very day on which this petition was filed, the operating of the well ceased.
It is contended by the plaintiff in error, that in fact no penalty is incurred or can be incurred under this second section- until the casing has been drawn from the well; on the other hand, the relator contends that the circumstances determine whether the well should be filled or not, and that although the filling should have preceded the drawing of. the casing, the penalty is incurred at any time when a duty arose to fill the well, as provided in the second section, and that duty was not performed.
The time prescribed when this should be done, is when the owner or operator “is about to abandon or cease operating the same and before drawing the casing therefrom.” Now, it will appear very clear that while the statute provides that the duty is to do this filling when about to abandon the well, it could not (or, at least, very seldom) be shown before the casing had been drawn, that the time had arrived when the penalty had been incurred. “When about to abandon a well” is simply an expression indicating the state of mind of the owner or operator at the time, when he was about to do it; i. e., when he intended in the near future to cease operating and to abandon the well, but until he had performed some act, it would be exceedingly difficult, in any case, to show that the time had come when he had, in fact, violated the statute, since intention without an act is not to be punished. -
. There must be another time fixed. That being one point of time for the beginning of the scrutiny of his intention and conduct, there must be a subsequent time or event fixed by the statute when this filling of the well should- be accomplished, and the statute does not fix that in any way, unless it does so inferentially by this clause “before drawing the casing therefrom.” If that does not fix the time when the act must have been accomplished., then the time is not fixed at all, and it is left entirely indefinite, and is a matter pertaining simply to the mind or intention of the owner or operator of the well.
It will be seen by a scrutiny of that section what the mischief is which is to be provided against, viz., “that surface or fresh water shall not finally penetrate the oil or gas bearing rocks.” That mischief is guarded against in the first section of the act by the provision that when the well is being constructed and before this rock is reached it shall be so cased with iron casing as to prevent the fresh water from penetrating the oil bearing rock. If then the first section of the statute can be complied with and is complied with, it would be impossible as long as the casing remains that the mischief should happen; so that, considering what is provided in the first section, it seems even more clear than otherwise it would, that by the second section it was in-tended or presumed by the legislature that as long as the casing remained and it effectually accomplished its purpose, the object of the act would be accomplished and the penalty under the second section not incurred.
Now, it may be true, and personally I happen to know that it is true, *755 that although casing may be placed in a well, properly and securely in the first instance, so that the water is shut off from the lower strata of rocks, yet in process of time it becomes imperfect from various causes.
C. I. York, for plaintiff.
T. J. Moorshall, for defendant.
It may be that the pressure from above will force water under the end of the casing, although tight in the first place, into the well; it may be that the casing itself will collapse, or it may be that it will corrode or rot away, or some imperfection appear in it, by reason of which the surface water is allowed to get into the well: but all that is simply accidental personal knowledge, and practically nothing of it appears in the case. And whether it did or did not we must take the provisions of the statute as they are, and from them it would appear that the legislature has assumed as Í have said, that when the first section is complied with, it will prevent this mischief and there is no provision yet as to what shall be done if while the well is being operated and before it is abandoned, anything should happen to the casing so that it did not prevent the water from getting down into the well.
The construction which we put upon this statute has not been arrived at without considering the latter part of section 2, which provides in substance, that in case the owner or operator does not fill the well, as provided in the first part of the section, then the landowner shall comply with this section, and if he does not comply with it, or ineffectually complies with it, though he attempts to comply with it, then some other person may comply with that section.
The section is not very carefully drawn, as would appear from these provisions, because, this being a work that should be done when the owner or operator is about to discontinue operating the well, if he does not do it, but draws the casing and thus incurs the penalty, of course, it would be impossible, in the fullest sense of the term, for any person thereafter to fully comply with the statute, since the filling must be done before the casing is drawn. But that results from a hasty drawing of the statute or want of care in preparation, and while it is to be considered, 'in determining the true construction of the first part of sec. 2, yet it is not sufficient to indicate that the construction we give it is not the correct one.
Now, it doe's not appear from this petition that the casing has ever been pulled, and therefore, under the construction of the statute which we feel bound to give, this penalty was never incurred; that is, it does not appear that it was in fact incurred, and for these reasons we think the Court of Common Pleas committed an error, in the first place, in overruliug the demurrer, and that there was error afterwards in sustaining the verdict of the jury and in refusing a new trial because of a lack of proper averment to show that the penalty under this sattute, was in fact, incurred by the defendant.
The judgment of the Court of Common Pleas, therefore, in this case will be reversed, the verdict set aside, and the case will be remanded to the Court of Common Pleas for such further proceedings as may be authorized by law. The judgment for the costs on error will be awarded agáinst the defendant in error.